# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF NEW YORK MELLON, | |
| Plaintiff, | Case No. 3:16-CV-00436-RCJ-WGC |
| vs. | **ORDER** |
| HIGHLAND RANCH HOMEOWNERS ASSOCIATION and AIRMOTIVE INVESTMENTS LLC, | |
| Defendants. | |

This case arises from a non-judicial foreclosure under NRS 116.3116. The parties have filed competing motions for summary judgment regarding Plaintiff's quiet title claim. Finding an offer of tender would have been futile, the Court grants summary judgment for Plaintiff. Furthermore, the Court denies Defendant Highland Ranch's motion for summary judgment as to Plaintiff's claim under the Nevada Deceptive Trade Practices Act (NDTPA) because there are still triable issues of material fact.

## FACTUAL BACKGROUND

The following facts are undisputed: In 2004, non-party homeowners obtained a $250,000 mortgage loan to purchase the property located at 6411 Samish Court, Sun Valley, Nevada 89433.

Plaintiff acquired the note and Deed of Trust by the Corporate Assignment of Deed of Trust recorded in 2009.[1] In 2011, as a result of the homeowners' failure to pay HOA fees, Defendant Highland Ranch recorded a notice of delinquent assessment. It further issued quarterly assessments of $66. Although there may have been costs from maintenance or nuisance abatement, those amounts are not enumerated in the record. A non-judicial HOA foreclosure sale took place in June 2014, at which time TBR I, LLC ("TBR") purchased the property for $31,100.[2] The deed of sale was recorded in July 2014. Subsequently, TBR transferred its interest in the property to Defendant Airmotive Investments, LLC ("Airmotive") by way of quitclaim deed.

During this time frame, Plaintiff and Defendant Highland Ranch engaged in routine correspondence regarding this and a significant number of other similarly-situated properties. In the communications regarding the property at issue, Defendant Highland Ranch's agent, Gayle Kern of Kern & Associates ("Kern"), demanded a superpriority amount of $3,264.25 without explanation as to how she reached that calculation. (ECF No. 93 Ex. F at 9.)[3] In other similar situations, Kern told Plaintiff to stop sending checks for less than the requested superpriority amount. (*See, e.g.*, ECF No. 93 Ex. H at 36.)

After the foreclosure sale, Defendant Highland Ranch filed an interpleader action in state court seeking to settle any claims that it acquired surplus proceeds from the foreclosure. (ECF No. 86 Ex. 13.) The court entered default against Plaintiff because it never responded despite proper service. (ECF No. 86 Ex. 15.) Subsequently, the court entered an order dismissing the case with prejudice and held that:

///

---

[1] The Court incorporates Plaintiff's predecessor-in-interest, Bank of America N.A., and its agents, under the umbrella term "Plaintiff."

[2] TBR was a named defendant in the complaint, however Plaintiff has since stipulated to dismissal without prejudice. (ECF No. 17.)

[3] For reasons unclear, Kern changed the amount to $2,902.75 after the sale. (ECF No. 93 Ex. N.)

1

2

> Any and all Defendants are restrained from instituting any actions against Plaintiff for the recovery of any amounts of the surplus funds; that this order shall serve as a full release of any junior deeds of trust recorded against the Subject Property by any Defendants herein; and no party in this action will have any future claims to the surplus funds remaining from the foreclosure sale on June 23, 2014.

3

4

(ECF No. 86 Ex. 16.)

5

6

In 2016, Plaintiff brought this action claiming quiet title, violations of NRS 116.1113,

7

wrongful foreclosure, injunctive relief, and deceptive trade practices. After partial discovery, the

8

Court granted summary judgment in favor of Plaintiff based on *Bourne Valley Court Tr. v. Wells*

9

*Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), which held that the Nevada statutes governing

10

these foreclosures were facially unconstitutional. (ECF No. 45.) Subsequently, the Ninth Circuit

11

overturned *Bourne Valley* and remanded the case. (ECF No. 67.) Following further discovery, the

parties filed competing motions for summary judgment. (ECF Nos. 86, 87, and 93.)

12

## LEGAL STANDARD

13

A court should grant summary judgment where "the movant shows that there is no genuine

14

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

15

Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could

16

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

17

(1986). Only facts that affect the outcome are material. *Id.*

18

To determine whether summary judgment is appropriate, a court uses a burden-shifting

19

analysis. On the one hand, if the party seeking summary judgment would bear the burden of proof

20

at trial, that burden may be satisfied by presenting evidence that proves every element of the claim

21

such that no reasonable juror could find otherwise assuming the evidence went uncontroverted. *Id.*

22

at 252. On the other hand, when the party seeking summary judgment would not bear the burden

23

of proof at trial, it need only demonstrate that the other party failed to establish an essential element

24

of the claim or present evidence that negates such an element. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 330 (1986) (Brennan J., concurring). A court should deny summary judgment if either the moving party fails to meet its initial burden or, if after it meets that burden, the other party establishes a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### ANALYSIS

All parties request summary judgment on Plaintiff's claims of quiet title, violations of NRS 116.3116, and wrongful foreclosure. Defendants argue that the interpleader action bars Plaintiff's claims and, despite agreeing on the substantive facts, the parties dispute whether Plaintiff offered tender and, if not, whether such an offer would have been futile. Finally, Defendant Highland Ranch seeks summary judgment against Plaintiff's claim under NDTPA.

### I.    *Claim Preclusion*

Prior to engaging the merits of the claims, the Court first addresses Defendants' argument that Plaintiff's claims are precluded. Defendants argue that Plaintiff's claims are barred by the doctrine of claim preclusion or, in the alternative, were compulsory counterclaims that Plaintiff waived by not raising in previous litigation. For this argument, Defendants point to the interpleader case.

Defendants claim that the state court's order is preclusive because it states that "this order shall serve as a full release of any junior deeds of trust." (ECF No. 86 Ex. 16.) As Defendants attempt to give preclusive effect to a Nevada state court ruling, this Court applies Nevada law. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). Under Nevada law, claim preclusion applies where: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) ///

(footnotes omitted). Claim preclusion is an affirmative defense; thus, the party alleging it bears the burden of proof. *See Bennett v. Fid. & Deposit Co. of Md.*, 652 P.2d 1178, 1180 (Nev. 1982).

Plaintiff does not contest the first two elements but argues that Defendants have not proven the third. The Court agrees that Defendants have not met their burden of proof. "The test for determining whether the claims, or any part of them, are barred in a subsequent action is if they are 'based on the same set of facts and circumstances as the [initial action].'" *Mendenhall v. Tassinari*, 403 P.3d 364, 370 (Nev. 2017) (quoting *Five Star*, 194 P.3d at 714). That is, a court looks to whether "the second suit [is] based on the same facts and alleged wrongful conduct . . . as in the first suit." *Five Star*, 194 P.3d at 714.

Here, the first suit was an interpleader claim based on the concern that there "may [be] conflicting claims regarding the surplus funds," (ECF No. 86 Ex. 13 at ¶ 12), and that Defendant Highland Ranch "may be exposed to multiple and conflicting liabilities [in regard to those funds]," (ECF No. 86 Ex. 13 at ¶ 14). Accordingly, it requested the court to enjoin Plaintiff (and the other defendants in that action) "from instituting separate action . . . in connection with the surplus funds" and "discharge . . . any liability in connection with the surplus funds." (ECF No. 86 Ex. 13 at 4.) Thus, the sole factual basis for this claim was the purported excess funds resulting from the HOA foreclosure sale, not Defendants' right to hold such a sale—let alone to declare that such a sale extinguished Plaintiff's lien. Those claims were not "actually brought in issue, litigated[,] and determined," *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1192 (Nev. 1994), at any point in the state interpleader proceeding.[4]

For this reason, the "wrongful conduct" is different in each case. In the interpleader litigation, the conduct at issue would have been Defendant keeping the excess proceeds in violation

---

[4] The apparent fact that Defendant Highland Ranch was the only party active in the interpleader litigation further supports the Court's conclusion. Review of the state court docket shows that all named defendants had defaults entered against them for failure to respond.

of NRS 116.31164(7)(b). In the instant litigation, the conduct is Defendants declaring the foreclosure sale extinguished Plaintiff's lien on the property. Consequently, the doctrine of claim preclusion does not bar Plaintiff's claims in the instant case.

Turning to Defendants' related argument, the instant claims were not compulsory counterclaims—thus not waived. Nevada law defines "interpleader" as "an equitable proceeding to determine the rights of rival claimants to property *held by a third person having no interest therein.*" *Balish v. Farnham*, 546 P.2d 1297, 1299 (Nev. 1976) (emphasis added). While Defendants may have disclaimed any interest in the surplus proceeds of the foreclosure sale, they certainly have not ceded their interest in an unencumbered title to the property itself. Defendant Highland Ranch cannot hold itself out as a "disinterested third party" in the original action and then argue in a second action that counterclaims against Defendants' interest were compulsory and now barred.

Furthermore, raising the issue of Defendants' right to extinguish Plaintiff's lien on the property through the non-judicial foreclosure would have greatly expanded the scope of the litigation beyond that indicated in the interpleader complaint. Such expansion would not be in the interest of promoting judicial efficiency. *See, e.g.*, *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) ("[I]nterpleader . . . cannot be used to solve all the vexing problems of . . . litigation . . . . [I]t was never intended to perform such a function, to be an all-purpose 'bill of peace.'").

Lastly, despite Defendants' contentions, resolution of these claims would not necessarily "render the State Court decision in the interpleader action a nullity." (ECF No. 107 at 4.) At no time did the state court render any decision on the issue of the propriety of the sale itself—nor did Defendant ask for such a ruling in its complaint. Defendant's argument in reply, that "[i]n resolving [the issues raised in interpleader] . . . [Plaintiff] necessarily would have been required to address

whether [Defendant's] lien was proper, whether it had the legal authority to foreclose, and the amount of that lien entitled to super-priority status," (*id.*), is unpersuasive. Defendant cannot specifically label an action as "interpleader" and then later claim it was really a quiet-title action. (*See, e.g.*, ECF No. 86 Ex. 13 at ¶ 15 ("Nevada law permits Plaintiff to institute this [interpleader] action in this Court in order to resolve the conflicting claims *involving the surplus funds*.") (emphasis added).)

Accordingly, the Court finds that Plaintiff's instant claims would have been permissive counterclaims and, as such, not barred. *See Cutts v. Richland Holding, Inc.*, 953 F.3d 554, 557–58 (9th Cir. 2019) (noting that, under Nevada law and Nev. R. Civ. P. 13, compulsory counterclaims are barred in a later action, but permissive counterclaims are not).[5]

## II.   *Quiet Title*

Finding that the claims are not procedurally barred, the Court turns to their merits. Plaintiff contends that Defendants' agent refused to provide the superpriority amount, which prevented it from offering proper tender. In the alternative, Plaintiff contends such an offer would have been futile because Defendants had a common practice of refusing offers for less than the full lien. The Court finds that Plaintiff failed to tender the superpriority amount as required by statute, but this failure is non-dispositive because an offer of tender would have been futile.[6]

Defendants argue that Plaintiff was able to make a tender offer because the HOA lien notice stated the current amount owed plus "continuing amounts that may become due including, but not limited to, quarterly assessments commencing on the 1st day of January, 2011 in the amount of

---

[5] The Court does not address Plaintiff's alternative arguments that Rule 13 does not preclude claims by a party who did not file a "pleading" in the underlying litigation and that the state court's order is null because it improperly provided relief beyond that requested in the complaint.

[6] As the Court finds for Plaintiff on the issue of futility, it does not address Plaintiff's alternative arguments of equitable considerations, facial unconstitutionality of the statute, or as-applied unconstitutionality of the statute.

Sixty Six Dollars . . . ." (ECF No. 101 at 7.) This argument is correct, in that where an "HOA d[oes] not indicate that the property had any charges for maintenance or nuisance abatement[,]" payment of nine months' worth of assessments satisfies the superpriority lien. *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC* (*SFR*), 427 P.3d 113, 118 (Nev. 2018) (en banc). Thus, Plaintiff could have sent a tender offer including a check for $198, based on the notice, which would have been sufficient. As Plaintiff had the ability to make a proper tender offer, but failed to do so, Plaintiff's letter does not constitute a valid tender.

Since Plaintiff did not offer tender, the Court turns to Plaintiff's alternative argument of futility. It claims that Kern had a standing policy to refuse any offer for the correct superpriority amount conditioned upon a release of a subordinate lienholder's obligations. Thus, if Plaintiff were to offer such a tender it would be futile because Kern would have rejected it.

Under Nevada law, the general rule is that "a promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender"—there must be an actual attempt to pay the amount due. *7510 Perla Del Mar Ave. Tr. v. Bank of Am., N.A.*, 458 P.3d 348, 350 (Nev. 2020) (en banc). However, there is an exception to this rule when formal offer of tender would be "futile" because the evidence shows the debtee would have refused the offer. *Id.* at 351–52. Thus, in the current context of non-judicial foreclosure, a debtor that proves futility "preserve[s] its interest in the property such that [the purchaser at foreclosure] purchased the property subject to [the debtor's] first deed of trust." *Id.* at 352.[7]

Defendants argue that Plaintiff's tender offers routinely included as a condition of "a full release of the entire lien." (ECF No. 100 at 10.) They point to a previous rejection letter from Kern

---

[7] Plaintiff also relies on *Bank of Am., N.A. v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217, 1220 (Nev. 2019), *argued en banc*, No. 73785 (Nov. 4, 2019), which Defendants claim "is no longer citable authority," since the Nevada Supreme court agreed to rehear the case en banc. (ECF No. 101 at 23.) This argument is moot because *Perla* stands for the same proposition.

which stated that the HOA "has no obligation to accept a partial payment from a lien-holder that is conditioned on releasing *the full amount of the lien*, and most certainly will not accept a payment with condition on the 'expressed or implied' endorsement therefore." (*Id.* (quoting ECF No. 100 Ex. 16).)[8]

Defendants' characterization of Plaintiff's condition is untrue. The condition included in Plaintiff's letters to Kern merely stated that acceptance of the offered tender "will be strictly construed as an unconditional acceptance on your part . . . that *[Plaintiff's] financial obligations towards the HOA in regards to the real property* . . . have now been 'paid in full,'" (*see, e.g.*, ECF No. 93 Ex. H at 14 (emphasis added))—not the entire lien as Defendants claim.

Kern's letters further stated, "Any payment received based on this demand will be applied to the account, however, the lien will not be released until it is paid in full." (ECF No. 100 at 10 (quoting ECF No. 100 Ex. 10).) This requirement, that Plaintiff pay the entire the lien and not just the superpriority amount, is a reading of NRS 116.3116 that the Nevada Supreme Court has repeatedly rejected. *See, e.g.*, *SFR*, 427 P.3d at 118 (analyzing a prior version of the statute with identical pertinent language and finding that "[a] plain reading of the statute indicates that the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments"). Consequently, Defendants' statement is inapposite because Plaintiff's goal in making a tender offer was to re-assert its lien on the property by paying the superpriority amount in one payment, not in starting a series of installments for a total amount it had no legal obligation to pay.

Defendants also point to Kern's statement during deposition: "Had [Plaintiff] sent a check that was not conditional, it would have been accepted and applied." (ECF No. 100 at 10 (quoting

---

[8] The precise language Defendants quote appears to be on a page of the exhibit that is illegible. However, substantially similar language can be seen in Kern's letter of May 16, 2013, (ECF No. 93 Ex. H at 17).

ECF No. 100 Ex. 11).)[9] However, the Nevada Supreme Court has explicitly held that "[a]lthough [plaintiff's] tender included a condition [that the HOA would find the plaintiff's obligations paid in full], *it had a [legal] right to insist on the condition*." *SFR*, 427 P.3d at 118 (emphasis added). In fact, the language used in the tender letter from the plaintiff in that case is identical to the language used by Plaintiff in its tender letters.

Additionally, Defendants' claim that Kern would have accepted payment is refuted by her multiple letters returning a prior tender offer with the exact same language as in the instant case *and an attached check*, stating, "I do not understand why you are increasing fees for my client with duplicate communications. *You must cease and desist such actions*." (ECF No. 93 Ex. H at 36 (emphasis added); *see, e.g.*, *id.* at 29 ("Your actions [sending tender amount requests and offers] have triggered assessments in the amount of $150.00. Your client should tender this amount immediately. The actions taken are prejudicial and without legal merit. It is unfortunate that you and your client have such little regard for the members of the Association that pay to protect your client's collateral while you and your client do nothing but create further hardship.").)

As a result, Defendants' argument that "it naturally follows that [Plaintiff] knew or should have known that it was not futile for [it] to send a check as [it] did in many, many other cases," (ECF No. 101 at 22), fails to provide an iota of persuasion when Plaintiff has presented letters from Kern rejecting such checks in "many, many other cases." To require Plaintiff to go through the formality of offering tender despite all of the evidence that such an offer would be rejected is

---

[9] In contrast with this assertion, Defendants rely on *SFR* to argue that "the Nevada Supreme Court has deemed that such a payment **would not have been conditional**. Kern advised it [sic] its letter that it would accept **any payment that was not conditional**." (ECF No. 101 at 22:15–17.) These assertions are nonsensical and belied by Kern's rejection of multiple offers with similar accompanying language. Even more, the court did not state that all payments are not conditional, but that party can insist on conditions when it has a legal right to do so. *SFR*, 427 P.3d at 118 ("[V]alid tender must be unconditional, or with conditions on which the tendering party has a right to insist.").

the precise definition of futility. *Perla*, 458 F.3d at 351 ("The law does not require one to do a vain and futile thing.") (quoting *Schmitt v. Sapp*, 223 P.2d 403, 406–07 (Ariz. 1950)).

In the instant case, Kern sent Plaintiff a letter claiming that the superpriority amount was $3,264.25 without providing an accounting. The letter further stated, "As you know, conditional payments will not be accepted and will be returned to your office. Any payment received based on this demand will be applied to the account, however, the lien will not be released unless it is paid in full . . . ." (ECF No. 100 Ex. 10.) Therefore, Plaintiff has presented overwhelming evidence that Kern would have refused a proffered tender for the correct superpriority amount.

Accordingly, the Court finds that a proper tender offer would have been futile, and therefore grants summary judgment on the issue of quiet title in favor of Plaintiff against both Defendants.[10] Because the Court grants summary judgment on this cause of action in favor of Plaintiff, it does not address the second and third causes of action which Plaintiff brought in the alternative. *See Perla*, 458 P.3d at 350 n.1. Furthermore, the parties do not address Plaintiff's "Fourth Cause of Action" titled "Injunctive Relief," so the Court does not either. Thus, there is only one cause of action left for the Court to address—whether Defendant Highland Ranch is liable for deceptive trade practices.

### III.    *Deceptive Trade Practices*

Plaintiff claims that Defendant Highland Ranch engaged in deceptive trade practices by, among other things, "falsely represent[ing] the amount of the super-priority portion of its lien . . . [and] the information contained in the recitals in the trustee's deed upon sale." (*See, e.g.*, ECF No. 1 at ¶¶ 72–80.) Plaintiff does not move for summary judgment on this claim, but Defendant

---

[10] Defendant Airmotive appears to argue that it is a bona fide purchaser if the Court engages in equitable balancing. (ECF No. 101 at 23–27.) This argument is inapposite because "[a] party's status as a [bona fide purchaser] is irrelevant when a defect in the foreclosure proceeding renders the sale void." *SFR*, 427 P.3d at 121. Although granting quiet title here does not render the entire foreclosure sale void, it does render the sale "void as to the superpriority portion." *Id.*

Highland Ranch does, arguing: (1) it complied with the Nevada statutes, (2) the statutes do not apply to real estate transactions, and (3) it never knowingly made any false representations.

Defendant Highland Ranch claims that NRS 598.0955 prevents any liability because it states that "the provisions of NRS 598.0903 to 598.0999, inclusive, do not apply to conduct in compliance with the orders or rules of, or a statute administered by, a federal, state[,] or local governmental agency." This defense is contingent on the further contention that its actions complied with Chapter 116 of NRS. However, as this Court finds above, Defendant Highland Ranch did not comply with NRS 116.3116 when it demanded a superpriority amount that was over fifteen times the actual amount of the superpriority.

Next, Plaintiff claims that Defendant Highland Ranch is liable under three sections of NRS Chapter 598, which state in pertinent part:

- A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she . . . knowingly makes any other false representation in a transaction. NRS 598.0915(15).
- A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she . . . knowingly misrepresents the legal rights, obligations[,] or remedies of a party to a transaction. NRS 598.092(8).
- A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly . . . fails to disclose a material fact in connection with the sale or lease of goods or services [or] [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services. NRS 598.0923(2)–(3).

The Court agrees that the limit to transactions involving "sale or lease of goods or services" in NRS 598.0923(2) and (3) renders them inapplicable to real estate transactions. Thus, summary judgment is appropriate for these subsections. However, there is no such limit in NRS 598.0915(15) or NRS 598.092(8)—they apply to "transactions." Defendant Highland Ranch provides no support for its claim that a real estate transaction, such as a foreclosure sale, is not a transaction under these statutes. In fact, multiple cases from this District have already held that the statutes cover non-judicial foreclosure sales. *See, e.g.*, *Bank of N.Y. Mellon v. Blackrose Invs.,*

*LLC*, No. 2:17-CV-00065-APG-BNW, 2019 WL 3323498, at \*5 (D. Nev. July 24, 2019); *Bank of N.Y. Mellon v. Nevada Ass'n Servs., Inc.*, No. 2:16-CV-00370-APG-BNW, 2019 WL 2427938, at \*7–8 (D. Nev. June 10, 2019).

Lastly, Defendant Highland Ranch contends that it could not act knowingly because the Nevada Supreme Court had not ruled on whether the superpriority amount under NRS 116.3116(2) included collection fees and costs until 2016; thus, the law was unsettled. However, the Ninth Circuit has held that such an assertion could not be made in good faith as of 2010. *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623 (9th Cir. 2019) (citing *SFR*, 427 P.3d at 117). Furthermore, the Nevada Supreme Court has repeatedly rejected the argument that the law regarding what was to be included in the superpriority amount was unsettled. *See, e.g.*, *SFR*, 427 P.3d at 118 ("[Defendant's] claim that . . . the payment required to satisfy the superpriority portion of an HOA lien was legally unsettled at the time [in 2012] is unpersuasive . . . . [A] plain reading of NRS 116.3116 indicates that at the time of [plaintiff]'s tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien. Thus, this issue was not undecided."); *see also Smith v. State*, 151 P. 512, 513 (1915) ("Every one is presumed to know the law and this presumption is not even rebuttable."). Thus, this argument fails, and that claim survives summary judgment.

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (ECF No. 93) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No. 86) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No. 87) is DENIED.

IT IS SO ORDERED.

Dated July 8, 2020.

_____
ROBERT C. JONES
United States District Judge